**Moses COTY, Appellant,**

v.

**The HOME INDEMNITY COMPANY, Appellee.**

**No. 5244.**

Court of Civil Appeals of Texas, Waco.

May 10, 1973.

Rehearing Denied May 24, 1973.

Brock & Williams, Talmadge Boyd, Houston, for appellant.

Pomeroy & Tekell, Kenneth Tekell, William Book, Houston, for appellee.

## OPINION

JAMES, Justice.

This is a workmen's compensation case which was tried before a jury and resulted in a verdict of fifty-four (54) weeks total temporary disability. A judgment for 54 weeks, less 35 weeks of compensation previously paid by Appellee at the rate of $49.00 per week was entered against the Defendant-Appellee Home Indemnity Company, and this appeal was perfected by Plaintiff-Appellant Coty.

The jury found, in answer to Special Issue No. 1, that the injury of October 19, 1970, was a producing cause of total incapacity; in answer to Issue 1A, that the beginning date of total incapacity was "October 19, 1970;" in answer to Issue 1B, that the ending date of total incapacity was "November 1, 1971"; and in answer to Special Issue No. 2, the jury failed to find from a preponderance of the evidence that the injury of October 19, 1970 was a producing cause of any partial incapacity.

Plaintiff-Appellant Coty appeals on six points of error, attacking Special Issue 1B (cutoff date for total incapacity at "November 1, 1971") because there is (1.) no evidence and (2.) insufficient evidence to support such answer, and (3.) that such answer is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. Appellant attacks the jury's failure to find partial incapacity in response to Special Issue No. 2 on the grounds: (4.) and (5.) that he (Plaintiff-Appellant) is entitled to a finding of partial incapacity as a matter of law, and (6.) that the jury's failure to find partial incapacity is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

We sustain Appellant's Point Six and reverse and remand the cause to the trial court for new trial. That is to say, we have carefully examined and weighed all of the evidence and have determined that the jury's failure to find partial incapacity is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Moses Coty at the time of trial was a man 57 years of age, with a seventh grade

education. He was injured on October 19, 1970, at about 8 AM while working as a warehouseman doing manual labor for Holly Produce Company. At the time of this injury he had been so employed at this same place for about fourteen years, and his usual daily working hours were from about 2 AM to 10 or 11 AM. The warehouse was 180 feet by 150 feet in size. Coty's job consisted in loading and unloading produce of all kinds which was in sacks weighing a maximum of one hundred pounds each, and in stacking these sacks of produce inside the warehouse, which work required a considerable amount of lifting of these sacks of produce above and over his head. His job also included making sales of produce to customers.

On October 19, 1970, Coty and others were unloading potatoes from a trailer and moving them down a ramp to the loading dock; and on the way down the ramp, he fell from the ramp about six feet largely in an upside down position, and landed mainly on his right shoulder and arm upon the concrete walk below. He was not able to get himself up, but was helped by one James Kevin, the warehouse foreman, to get up. He testified that he had great pain in his neck, right shoulder and right arm. Kevin instructed Coty to go to the warehouse and sit down, to wait to be taken to a doctor. He did as he was told, and waited "thirty to thirty-five minutes" during which time the pain got worse. He testified he was not able to move his right arm. He was sent by Mr. Holly Onishi, one of the owners of the company, to see Dr. Frierson, who examined and x-rayed him, gave him some "pills" and "shots in the arm." He was treated by Dr. Frierson about twice a week for three weeks, during which time he made little progress. Dr. Frierson told him to try to go back to work, and he did go back and do light work for a few days, "no more than a week". He did work requiring the lifting of light bags or things he could lift with his left arm. He testified he had to quit this work because of his pain and his inability to use his right arm and shoulder.

Dr. Frierson recommended that he see another doctor, and sent him to Dr. Hirshberg, who made an appointment to put him in St. Joseph's Hospital, where he stayed "eight or ten days", in January 1971. Here his neck was put in traction about two hours a day, and he was given injections in his right arm. During his stay in the hospital he developed kidney trouble or a urinary problem. He testified he was not any better when he left the hospital than when he went there.

He was then referred to a Dr. Donovan who gave him injections and gave him a collar for his neck which he used about two hours and a half each night for a time. He was treated by Dr. Donovan for about five months, during which time Coty saw him about three times a week. Dr. Donovan took additional x-rays, gave him injections and prescribed some physiotherapy. Coty testified that he still was not improved after his treatment by Dr. Donovan. In March 1971 he was discharged from further care and released to return to work. He continued to have pain in his right shoulder and arm, but was given no further medical treatment. Then Coty's attorney sent him to see a Dr. Goodall, whom he saw one time, and then his attorney sent him to see a Dr. Veggeberg who testified.

Coty testified that at the time of trial in October 1972, about two years after the October 19, 1970 injury, his neck, right shoulder and arm still hurt him and were not getting much better, and that he did not have but "a very little bit" of use of his right arm, was limited in raising his right arm, and still had trouble turning his head around.

As stated above, about two weeks after his injury, he went back and worked four days, but said he could not stand up to it, and then about three weeks later he tried

to work again, after which time he went to the Hospital.

He was off work approximately ten months in all, after which time he went back to work doing light duty.

Then, on an early morning in January 1972, at about 5:30 AM, he was going down some steps on an errand for the shipping clerk when he slipped and fell on ice on his right side, in which injury he injured his ribs as well as re-hurt to some extent his right shoulder and arm. (The testimony of Dr. Veggeberg discussed later in this opinion will clarify this last point).

Coty testified that before his injury of October 19, 1970, he was earing $1.80 per hour and was working from 55 to 62 hours a week, and that after this injury he went back to work on a light duty basis, and was earning the same hourly wage but was working only 35 to 40 hours per week; that he couldn't put in as many hours as before because of the pain in his neck, right shoulder and arm.

On cross-examination, Coty testified in effect that prior to his January 1972 accident he "was getting along fair, but it never was well".

Coty was now at the time of trial working for Holly Produce Co. for the same hourly wage as before, but was working fewer hours than before his injury of October 19, 1970, and was not able to lift the 100 lb. and other heavier type sacks, and particularly was unable to do work requiring lifting above his head. He testified that if he lost the job he now had that he did not feel he would be able to find another job.

Dr. Kermit R. Veggeberg, a specialist in orthopedic surgery, testified in behalf of the Plaintiff-Appellant, and was the only doctor to testify in the case. Dr. Veggeberg saw Coty on February 24, 1972, secured a case history from him, and made a detailed examination of his neck, right shoulder and right arm. He said Coty complained of pain in his right shoulder, with pain radiating from the shoulder down into the right arm, and that he was not able to use his right arm and shoulder as well as he could before the first accident. Dr. Veggeberg made his examination in two areas, one being in the right shoulder and associated structures and the other being in the rib cage area. Since the rib cage problems originated from the January 1972 accident, and are therefore not growing out of the October 19, 1970 accident in controversy, we will confine our discussion to his examination of the right shoulder and right arm. He checked in detail the abduction (ability to swing the arm from side to side), internal rotation (turning the arm behind the body), and external rotation of the right shoulder and arm as compared with the left shoulder and arm. Without detailing these findings here, Dr. Veggeberg found (and testified) that Coty had a 26% loss of motion in his right shoulder as compared to his left. From x-rays he found Coty to have an area of soft tissue calcification in a tendon area.

Dr. Veggeberg's diagnosis was "contusion of the right shoulder with frozen shoulder syndrome". The technical name for this is "fibrosis ankylosis", but it is a stiff shoulder. He said Coty's right arm had been kept in a down position by his side because of the pain, and had become progressively more difficult to stretch out. This in turn caused a loss of range of motion. He said Coty could not raise his right arm all the way up. This diagnosis in his opinion was caused by the accident in question (of October 19, 1970) and he testified unequivocally that Coty's condition is permanent. He did not believe exercises or physiotherapy would help Coty much, if any. Dr. Veggeberg testified that if he were making a pre-employment physical examination on Coty, that he would not pass him if the job required Coty to work over his head. In Dr. Veggeberg's opinion, the condition of his right shoulder and arm was caused by the accident of October 19, 1970, particularly since the calcium in the

tendons takes many months and sometimes years to form. He said Coty's fall on the ice (in January 1972) made his right shoulder and arm more painful temporarily, but this accident did not re-injure his right shoulder and arm.

Mr. Harvey Onishi, a Vice-President for Holly Produce, Inc., a man in charge of accounts receivable and receiving merchandise, testified in behalf of the Defendant-Appellee Home Indemnity Company. Altho Coty does not work directly under this witness's supervision, Onishi testified that Coty (as of the time of trial) is doing "an average good job". However, during the last few months, he had never observed Coty picking up the 100 lb. sacks of produce. He testified Coty "hasn't complained a lot" about his right shoulder. However, on cross-examination he did testify that Coty complained of some pain and discomfort, and also testified that Coty now works fewer hours per week than he did prior to his injury of October 1970; and that part of the reason is due to his not being able to do the required work and due to pain. Onishi testified that he could recommend Coty to his competitors as being able to "do the job" as a warehouseman.

We have carefully weighed and considered all of the evidence, and have determined that the jury's failure to find that the injury of October 19, 1970 was a producing cause of any partial incapacity is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In re King's Estate (1951), 150 Tex. 662, 244 S.W.2d 660. We accordingly reverse the trial court's judgment and remand the cause to the trial court for retrial.

Since the case is to be retried, we wish to point out that we believe the evidence is legally and factually sufficient to support the jury's answer to Special Issue 1B of "November 1, 1971".

Reversed and remanded.